Good morning, Your Honor. John Kaufman appearing for Fabian Lopez. Thank you for having me here and taking this oral argument. Because it's been my experience that these 15 minutes defy the laws of physics and fly by, let me ask the Court if there's anything of special interest to the Court before I launch into my statement about the case. Please proceed. It appears not, but I'm sure we'll jump in as you go along. Let me talk about initially the Fourth Amendment issues. The First Amendment, the first issue is reasonable suspicion. I don't think I'm going to win on that issue, but I need the Court to direct the Court's attention. When we have these lists of things that you look for that the Court has indicated, characteristics of the area, proximity to the border, traffic patterns, prior experience, recent border crossings, driving, vehicle characteristics, behavior or appearance of the driver, you know, Border Patrol reads these cases, too. And then when they come to stop these, these indicas apply to nearly every vehicle or could apply in some way to every vehicle within a 10 to 25 mile radius of the border. And our borders are long and evolved, and, you know, none of them are indicative of criminal behavior. But, of course, the law now is that we can rely upon the special expertise of the Border Patrol, and they read these decisions and prepare these back, and all of a sudden every vehicle is subject to a reasonable suspicion stop. With that said, let me move on to what I think I have more meat in my argument, and that is, what can you do after a reasonable suspicion stop? The law is pretty clear on that in this district and in the country. You can stop an individual. You can take him out of the vehicle. You can question him. If you feel that you're in danger or that the individual is a dangerous individual and you have that information, you can do a quick cursory pat-down search of this individual. And that's it. So what do you make of the White case? The White case was interesting in trying to tease out what the Fourth Amendment status was of what the police did, which I understand they pressed on the vehicle. And the court doesn't say, well, that's reasonable suspicion, but they say, well, it may implicate Fourth Amendment issues, but it's okay. I'm not exactly sure what their holding was, but that didn't have anything to do with danger or concern about weapons. It was just part of their investigation. Why isn't the tap on the vehicle analogous to that in White? Because there's a United States Supreme Court directly on point, the Place case. The Place case is where the officers went into the bus or the vehicle, started patting down luggage to see what was in the luggage, and the court said clearly, at that point, you're searching that luggage, and that's not permitted. White was a car, not luggage. White was a press on the car. This was a tap on the car. And the Place case has to do with feeling luggage. So I'm not sure you can say it's closer than the White case. Well, if you're feeling a car and you're feeling luggage, they're both inanimate objects. How about the Sharp case in which the officer steps on the rear bumper to see whether the car is heavily loaded? And I would counter that that is a search and not permitted by reasonable suspicion. You're not allowed to search on reasonable suspicion. On a reasonable suspicion, stop. But the issue becomes, when has the action gone from being investigatory to being a search? And that's the fine line that you're trying to... It's not a fine line in this case. The guy crawls underneath the vehicle, which is not in plain view, and all these reasonable suspicion search, they okay when you go around the car and look in the car with a flashlight or look in the car and see from plain view. But the undercarriage of the vehicle is not in plain view, and when you're going to the undercarriage of the vehicle and you're tapping on the vehicle, I think you've invaded the province of we're looking for something, we're searching for something, and hopefully we're going to find it in this vehicle. It's a search. There's no question about it. I think the government even admits it in their brief that it's an impermissible search. And their fallback position is, well, we haven't resolved this stuff on reasonable suspicion. Please include it as a basis for probable cause. But even then, there's nothing that tells you what's in that vehicle, what's in that little area underneath the vehicle. No one says that there's marijuana. There's no dog alerting. And that brings me to my third point on the search and seizure, is that they take these people, they put them in the back of a locked border patrol vehicle in the middle of summer. They haul their butts down to the nearest border patrol station, which in this case is about 10 miles away. They lock them away at the border patrol station, and then they start drilling holes in the vehicle. So when you were focusing on the arrest, it wasn't clear to me what that was leading to, because you didn't identify what evidence you wanted to suppress based on that detention. So was there any evidence that you were focusing on there, or was it just a concern about this happening along with the search? There was no statement taken, and there was no evidence. But the seizure of the vehicle, although they claim an independent probable cause, is directly related to the arrest of these individuals. And what I wanted really to get around to and discuss with the court is, I don't want the court to get too taken with the fallback theory of the government of consent, because that was neither found by the magistrate nor the district court, and it was a preposterous position taken by the government at the time of the hearings. No one voluntarily consents to get in the back of a border patrol vehicle, have his vehicle seized, get himself thrown in jail or in a detention area while they're searching the vehicle. Let me move on a little bit to a couple of the trial issues, the instructions. We're basically complaining about two instructions here. One is the mere presence instruction. One is the lesser included instruction. To understand my argument, you have to take a look at the government's argument, and the government's position is apparently parroting the decision of the trial judge in this case. Their position in mere presence is, well, gee whiz, not only do you have mere presence in a hidden compartment case, but we also have this conversation with Mr. Leone, the co-defendant who takes the stand in this case. He takes the stand and testifies against Mr. Lopez. In mere presence, I mean, there's a case directly on point that's the Magretti-Gonzalez case that is cited in my briefs and in the government's brief. It's just directly on point. And basically, that case says when you only have the only supporting evidence comes from a government agent, you still give the mere presence. But the juxtaposed position here is the mere presence argument is the case was involved a confidential informant, a government agent, confidential informant. That's a little different. Not really. In this case, when the witness turns to be cooperative, he's the equivalent of a government agent, and he's being paid for it. I mean, not cash, but in terms of remuneration and sentencing, he's being paid. Let me go to my juxtapositions here. So, wait. I mean, I understood Magretti-Gonzalez saying that if the government's case rests on more than just the defendant's presence and the jury is properly instructed on all elements of the crime, a district court may properly refuse to give a mere presence instruction. And I understood the government to be arguing that their case rested on more than just a defendant's presence. And they cite a range of items, including that he knew they crossed the border, that he did a thumbs-up when he saw the car, his statements. There were a range of other things beyond he was driving the vehicle. There's no evidence that he was across the border. There was evidence that the vehicle had been across the border. That he had testified to that, the fact that he … Mr. Leone testified. Mr. Leone. So there was evidence in the record that was more than mere presence. So why is that argument wrong? There basically is no evidence. He testified at a suppression hearing that he came from a construction yard and was going the long way back to Tucson. So what's our standard of review when we're looking at the district court's decision to deny the mere presence instruction? How do we review that? You review the decision. It is a question of law. That is de novo. You review the factual basis for that decision, abuse of discretion. Right, so we would have to say the district court abused his discretion. And if the district court is of the view that contrary to your determination that there was evidence of more than mere presence, then on what basis should we reverse that district court determination? I think you can find that all the findings that the court made still do not negate the grounds for a mere presence decision. Let me just briefly go to my position here. On the other instruction, the lesser-included instruction, their argument is it's all or nothing. Either he didn't know about it, and therefore he should be not guilty of both. And or he is guilty of both, and we're not going to give the lesser-included instruction. Combine that with, well, you're not entitled to mere presence, which is the basis of the argument that, you know, it's all or nothing. So if he knowingly possessed, if the jury found he knowingly possessed the marijuana, I understood the government's argument to be that given that there were 200 kilograms, I think, that a rational juror could not find that he was transporting it for his own use. And so that, therefore, a lesser-included offense instruction was not required. Not really. There's a combination here of points. One, it's a hidden compartment case. There is no knowledge, there is no indication that he knows anything about how much marijuana. Point. Either he knows or he doesn't know. Well. And that was the government's point. There was no in-between there that could be consistent with the facts of his case. Fine. Then you give the mere presence instruction, because that's the theory. Either he knows or he doesn't know, and if he doesn't know, he's merely present. Right. But on the mere presence, we look at all of the facts to determine how much the district court looks at the facts to determine how much involvement there was. The district court is in a much better position to gauge that, being more familiar with it, having sat through the trial and everything, than we are. Wouldn't you agree? Well, yes, absolutely. That's the case law. No question about that. Let me transfer to my last little issue and preserve a little bit of time. I want to talk about acceptance of responsibility. Here the Court found that he had accepted responsibility. It acknowledged that in the sentencing. It accepted the acceptance of responsibility found in the probation report. Yet the Court decided, well, I'm not going to grant it because, and then she lists some factors. She discusses factors. She never actually finds factors. My position is a month before the trial, he tells, you know, let us plead conditionally. I'm guilty. Let us plead conditionally. And the government says no. He's forced to go to trial. And the government then uses that. To prohibit him getting the acceptance of responsibility. Let me just talk. You want to plead conditionally on what condition? That he be allowed to appeal the Fourth Amendment issue. That's the only issue then before the Court. The other matters arise on the trial. The last point, the one that the government should give, if the government refuses to allow him to plead guilty, and the government forces him to go to trial, then I think it's incumbent upon this Court to give him that extra point because he's accepted responsibility. He wants to avoid trial. The government makes him go to trial. Let me reserve my last minute. All right. Thank you, counsel. We'll hear from the government. May it please the Court. I'm Elizabeth Strange from the U.S. Attorney's Office in Tucson representing the United States. The district court did not err in this case, and I am not going to address reasonable suspicion unless the Court has any questions on that. Were you the trial counsel for this case? No, I was not. So the opposing counsel says that the government concedes that there was a search in this case. Absolutely not. Okay. Absolutely not, Your Honor. And the issue that's now being raised about the investigatory stop being a search was not raised below. And the review for that should be plain error. If you look at the defendant's objection, for example, to the report and recommendation, it recites the facts, including the looking underneath the truck and tapping, and then argues there was no probable cause for the search at the substation, at the Border Patrol station. It doesn't raise this issue. So this Court should review that argument for plain error. It was not a search. It was part and parcel with an investigatory stop. The reasonable suspicion associated with this truck was the suspicion that there was an aftermarket compartment beneath the flatbed. And based on their observations for reasonable suspicion and their view and experience with past trucks that it had a similar compartment, that was their focus for the stop, suspecting there was contraband there. And their ---- What's the government's position regarding when a search ensued? Was there ever a search in the government? Oh, yes. At the Border Patrol station. So everything short of the Border Patrol was investigation in the government's view? Correct. Correct. And the ---- all the officers did was, as they're permitted to do, was to immediately confirm or dispel what their suspicion was. And tapping underneath and looking underneath this truck, it was no different than putting your foot down on a bumper to see if a truck was overloaded or, as counsel pointed out, when you're stopped on the side of the road, the policeman can come over and look inside of your car with its flashlight and look inside. This was no different type of search. And I think we ---- Counsel says it is different because having to crawl under the truck and look under the ---- underneath the truck for evidence is not consistent with items that are readily visible without having to undertake extra effort. What's your response to that? Well, Your Honor, if I could direct the Court's attention to the supplemental record, and if you look at pictures of the truck, Exhibit No. 2, which is at SER 2, and Exhibit No. 8, which is also at SER 8, you can see that it's not a matter of, like, a mechanic crawling under a truck. This is ---- this was obvious from the side, this compartment. It was way more metal than is apparent that's normally on a flatbed truck. And it was a matter of looking under and tapping at it. It wasn't a ---- I don't agree that it was as intrusive as suggested by the defendant. He is relying, the appellant is relying on place, the Supreme Court decision with the dealing of luggage.  I think so, Your Honor. In place, it was the personal carry-on luggage of someone on a ---- that was being squeezed. This is just a tapping, and the only information that was gleaned from this was it sounded like something was inside of it. So I do think that they're distinguishable. But even without this additional information that was gained from the investigation concerning the compartment, without it, there was probable cause to search the truck. And that was information that was gathered at the stop after they had conversation with the people in the truck. First of all, the appearance of both the driver and the passenger were spotlessly clean, particularly in comparison to the truck itself, which was laden with cement. And the question was presented, well, where have you been? Well, the defendant, the driver, said, well, I've been at a construction site. Well, this was completely belied by his appearance, right down to his white tennis shoes. And if you ---- again, if I could refer you to the SER, and if you looked at Exhibit No. 12 ---- I'm sorry, Exhibit No. 12 at SER 10, there's a picture of the defendant spotlessly clean, including his white tennis shoes. The truck itself was registered to a company in Green Valley, which, if you look at Exhibit 1, which is a map of the area at SER 1, the way to go from Green Valley to Tucson is to go north on I-19. That's the direct route. This driver said, well, I'm on my way to Tucson, and I'm taking Route 82 to Route 83 to get to Tucson, because that's faster and easier. Well, the agents both knew that that was nonsensical. That didn't make any sense. That's not the way that you get to Tucson, particularly when the driver had said, I'm coming from Rio Rico, and that's even farther south on I-19. The way to go to Tucson would be north on I-19. The passenger said that he had been picked up at a remote market on Route 82. Agents found that suspicious, because how why would he be there without transportation? And finally, when the agents asked the passenger, well, where have you been? He blurted out, I don't know what's in the truck, I don't know what's in there, but I'm willing to comply, or something along those lines. So given those additional factors that they learned at the stop, putting aside anything they learned about the compartment, there was probable cause to search the vehicle. And the search was done at the Border Patrol station. If I could turn to the, well, does the court want to hear about jury instructions? It seemed that the court understood the government's position on that. It's clear that there was not an abuse of discretion. The case law in this court, including Howell, has said that it's in the discretion of the district court, not to give the mere presence instruction if, in fact, it covers all the elements of the offense in the instructions given, and if the evidence against the defendant was more than mere presence. And in this case, the model instructions were given covering all the elements, and the court found that there was certainly an act of participation here and not just mere presence. So in its discretion, it chose not to do that. Turning to the other challenged instruction, which was the inclusion of simple possession, the court correctly found that, first of all, 220 kilograms of marijuana is far too much for personal possession, and that, yes, in the facts presented in this case, either a rational jury would find that he was transporting this marijuana as the driver in possession of it for purposes of delivery or distribution and certainly not for personal use. So, again, the court did not abuse its discretion in that. Counsel, opposing counsel appears to rest his argument largely on the fact that this was a hidden compartment case, and he seems to urge us to treat that differently. And what's your response to the fact that this is a case involving a hidden compartment and therefore his client shouldn't necessarily be charged with knowledge that the drugs were there? Well, I don't add the fact that it's a hidden compartment case doesn't make it any different from any other cases that have been before this Court when there's been a very large amount of narcotics involved. There are numerous cases here, and when it's in the possession of the driver who's the defendant, there are numerous cases that this court has found that that's enough. Whether it's a hidden compartment or not, I don't think makes any difference under the circumstances of this case, Your Honor. Turning to the acceptance of responsibility in this case, the government is not required to accept an agreement on the terms presented by the defendant. I don't agree with the argument that he was forced to go to trial. The government doesn't have to accept the conditional plea, and it didn't in this case. Of course, now, just because you go to trial, as this Court knows, it doesn't automatically mean he doesn't get his acceptance of responsibility points, but it's a very rare defendant that actually can get those. My argument is he is that defendant because he wanted to plead guilty, and it was only because the government would not accept a conditional guilty plea, which happens frequently. It was the only reason he went to trial. So what's your response to that? Well, the — what the defendant said he wanted to do was preserve his right to appeal the Fourth Amendment issue. But when he went to trial, he — he — that wasn't — he attacked the — the factual issues going to guilt, such as knowledge and intent, and he attacked the credibility of the government's witness. And, in fact, he still attacks the credibility of the government's witness. But this Court also relied on his testimony at the motion-to-suppress hearing. How does that factor in? Well, he was incredible. When he's shown a picture of himself, he said, oh, well, you know, can't you see the dirt? The dirt's — I can see the dirt there. It's under — and, again, I'm talking about Exhibit 12 at SER 10. He said, you know, I am dirty. Oh, those white tennis shoes, those are my construction shoes. Oh, you know, I was taking a faster and easier route. And the things that they have — under the comments to the guidelines that talk about acceptance of responsibility, one of them is, when do you accept responsibility? He didn't accept that until after the trial, after he was convicted. Whether or not he had been honest and forthcoming, no, he had not been honest and forthcoming. And as the Court alluded to, his testimony was unbelievable at the motion-to-suppress. How about factors such as showing contrition or remorse? I — Your Honor, forgive me, but I don't believe that's an element that goes to acceptance of responsibility, at least that wasn't one that was addressed in this case. So I don't really know if that's under the guidelines or not. It wasn't addressed in this case. But, again, the standard here is whether the district court clearly erred in not giving these acceptance points. The Court didn't, and it explained its reasoning why it did not. If there are not any other questions from the Court, we ask that this Court affirm. Thank you, Counsel. DeBato? Thank you, Your Honor. Just mentioning to counsel that it's always a little tougher when you're not the actual trial counsel. Sometimes, sometimes not. It depends on what happened at trial. Well, not much happened at trial. You know, they complain about the fact that I didn't roll over and play dead or Mr. Lopez didn't roll over and play dead at the trial. If you roll over and play dead at the trial, then you hear this case after a challenge under the — under the Habeas Act for ineffective assistance of counsel. So the only tactic we actually took there was we were going to attack the confidential the co-defendant who turned — Is the government obligated to accept your offer to plead? No. Absolutely not. However, at the same time, the government then can't take the position that, oh, you went to trial, therefore you're not entitled to acceptance of responsibility. Well, I think the government's position is a little more nuanced. It said you represented that you only wanted to challenge the Fourth Amendment issue. But actually, when the trial began, you challenged everything. So that was a little different than just saying I'm going to trial simply to preserve my Fourth Amendment argument. Once you're in trial, you're in trial. I mean, you got to do what you got to do in trial. And the consequences of having done that. That's the problem with your argument. Well, I think that's a separate issue here. If you're talking about — Is it possible for a defendant to accept responsibility in the course of the trial? I mean, your client could have testified, could have said, yeah, I was there, I knew what was in the tank. Yes, he could have done that. But he didn't. Because, you know, we were forced to go to trial. You make a decision to do — you do what you can to defend. That's what trial lawyers do. Let me just make this last point kind of quickly here, is that when the judge accepts the acceptance of responsibility, the inquiry should end there. It's not acceptance plus. In all the cases that we cited, the court really said, you know, I don't accept your acceptance of responsibility because of A, B, C, D. But in this case, the court says, I do accept it, but I'm still not going to give it to you because of other reasons. All right. Thank you, counsel. Thank you to both counsel. Again, thank you for — This argument is submitted for decision by the court. We'll be in recess for 10 minutes. Thank you again for permitting me to argue.
judges: Rawlinson, Bybee, Ikuta